IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| TERESA YEARNS, | ) |  |
| --- | --- | --- |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 17-4201-CV-C-WJE |
|  | ) |  |
|  | ) |  |
| KOSS CONSTRUCTION COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ORDER

Pending before the Court is Defendant Koss Construction Company's Motion for Summary Judgment (Doc. 62), and suggestions in support thereof (Doc. 63). Plaintiff Teresa Yearns has filed suggestions in opposition (Docs. 68 and 69), to which Defendant has filed a reply (Doc. 75). The issues are now ripe and ready to be ruled upon. For the reasons that follow, Defendant's motion shall be granted.

### I. Factual Background

This action arises out of Ms. Yearns' former employment with Koss Construction Company (Koss). Koss is a construction business that focuses primarily on paving roads and airstrips. (Doc. 68, ¶ 1). Ms. Yearns began working for Koss on May 1, 2013, as a general laborer and traffic controller. (Doc. 68, ¶¶ 1-2). Sometime during her employment, Ms. Yearns participated in a quality control training program offered by the Kansas Department of Transportation (KDOT), and became a quality control trainee. (Doc. 68, ¶ 3). She completed this program in June 2014. (Doc. 68, ¶ 13). Ms. Yearns did not receive a pay raise after finishing the program. (Doc. 68, ¶ 16).

In June 2015, Ms. Yearns verbally asked Becky Harmon, Koss' Loss Prevention and Compliance Officer, why she had not been promoted to a salaried position after completing the KDOT program (June 2015 Complaint). *Id.* Ms. Yearns felt she was completing the same type of work as her male peers for less pay. *Id.* Ms. Harmon memorialized this conversation, writing that Ms. Yearns was not promoted because all Quality Control Technician (QCT) positions were filled in Ms. Yearns' division. (Doc. 68, ¶ 19). Ms. Harmon noted that Ms. Yearns would be considered for a QCT job when a position became available. *Id.* Ms. Harmon participated in a follow-up

conversation about the June 2015 Complaint with Ms. Yearns and another Koss employee in either July or August 2015 (July 2015 conversation) (Doc. 75-2).

Sometime in June 2015, Ms. Yearns began working at a Koss job site in Pratt, Kansas. (Doc. 68, ¶ 21). In August 2015, Koss claims it began "winding down" the Pratt job site in the midst of experiencing a downturn in its overall business. (Doc. 68, ¶ 21, 23). As a consequence, Koss offered transfer opportunities to Ms. Yearns and other employees at the Pratt site to another role at a different job site.[1] (Doc. 68, ¶ 27). Plaintiff refused the transfer. (Doc. 68, ¶ 27, 30).

On August 20, 2015, Ms. Yearns sent an email to David Vestal, a division manager, complaining that three additional hours should have been included in her paycheck. (Doc. 68, ¶ 33). Two days later Ms. Yearns was informed she was being laid off. (Doc. 68, ¶ 30). Shortly thereafter, Ms. Yearns found other employment as a paraprofessional in a classroom. (Doc. 68, ¶ 36). Koss subsequently sent Ms. Yearns a Separation Notice on September 15, 2015, stating in part that she had been laid off for a lack of work and had found other employment. (Doc. 68, ¶ 37).

## II. Standard of Review

"Summary judgment is proper if the moving party 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Dryer v. NFL*, 814 F.3d 938, 941 (8th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "A court considering a motion for summary judgment must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Id.* at 941–42. Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011) (citation omitted). "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial." *Dryer*, 814 F.3d at 942 (citing *Anderson*, 477 U.S. at 256). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016) (quoting *Anderson*, 477

---

[1] Plaintiff alleges in her brief that "[t]here is no evidence . . . [Ms.] Yearns was ever offered a transfer." (Doc. 68 ¶ 27). However, a few paragraphs later she admits that Koss proposed at least one transfer to her. (Doc. 68 ¶ 30, 35).

U.S. at 252). Similarly, the Court "is not required to 'accept unreasonable inferences or sheer speculation as fact.'" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (citation omitted).

### III. Analysis

Plaintiff brings one retaliation claim against Defendant based on her Equal Pay Act (EPA) complaint. 29 U.S.C. §§ 215, *et seq.* Plaintiff contends Defendant violated the EPA by retaliating against her participation in a protected activity, namely, complaining about potential gender pay discrimination. In response, Defendant claims Plaintiff cannot establish a prima facie case of retaliation. For the reasons below, Defendant's motion is granted.

An EPA retaliation claim may survive summary judgment where Plaintiff offers direct evidence of retaliation or creates "an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016) (*citing Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014); *Tiedeman v. Neb. Dep't of Corrs.*, 144 F. App'x 565, 566 (8th Cir.2005); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). As Plaintiff does not argue direct evidence of retaliation, at issue is whether she has created an inference of retaliation.

Under *McDonnell Douglas*, Plaintiff initially bears the burden to prove a prima facie case of retaliation. *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 740 (8th Cir. 2017). If proven, the burden then shifts to Defendant to provide a non-retaliatory reason for the apparent retaliation. *Id.* (*citing Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011). Lastly, the burden returns to Plaintiff to prove Defendant's non-retaliatory reason was pretextual. *Id.* (citation omitted). The Court begins by analyzing whether Plaintiff has proven a prima facie case of retaliation.

### *Prima Facie Retaliation*

To prove prima facie retaliation, Ms. Yearns must show she engaged in a protected activity and "suffered an adverse employment action." *Donathan*, 861 F.3d at 740 (*citing Musolf v. J.C. Penney Co., Inc.*, 773 F.3d 916, 918 (8th Cir. 2014)). She must then "demonstrate a causal connection" between the adverse action and protected conduct. *Id.* (citation omitted). Essentially, this causal connection requires Plaintiff to "prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action." *Id.* at 739 (*quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013)). The Court finds that Plaintiff engaged in protected

conduct and suffered an adverse employment action, yet failed to establish a causal link between the two.

### a. *Plaintiff engaged in protected conduct.*

Protected activity under the EPA includes "fil[ing] any complaint or institute[ing] or caus[ing] to be instituted any proceeding under or related to" the Fair Labor Standards Act. *See* 29 U.S.C. §§ 215, *et seq.*; *Tiedeman*, 144 F. App'x at 566 (explaining a female employee's grievance about her employer "not honoring" a union contract did not amount to an EPA gender complaint and therefore was unprotected conduct). In this case, at issue is the protected conduct involving Ms. Yearns' EPA gender discrimination complaint. Specifically, Plaintiff contends her June 2015 Complaint, July 2015 Conversation, and August 20, 2015 email all constituted protected activity.

Here, at least some of Plaintiff's activities amounted to protected conduct. As an initial matter, Defendant concedes the June 2015 Complaint was protected. Next, however, the Court finds the July 2015 Conversation was unprotected conduct. The July 2015 Conversation did not involve filing complaint and did not cause or institute any subsequent relevant proceeding.[2] (Doc. 68, ¶ 46); (Doc. 69-6). Instead, it appears Ms. Yearns simply told another Koss employee about her June 2015 complaint. Thus, what remains is whether Plaintiff's August 20, 2015 email to Mr. Vestal was protected conduct.

After carefully reviewing the August 20, 2015 email, the Court finds it did not amount to a protected activity. The email complains of an inaccurate reporting of Plaintiff's hours worked, at least in part due to confusion whether Ms. Yearns herself was supposed to log them. Nowhere in the email does Ms. Yearns hint at discriminatory pay based on her gender or retaliation due to her June 2015 Complaint. Indeed, in her deposition Plaintiff explicitly affirmed the August 20, 2015 email concerned inaccurate reporting of her work hours, and did not include any references to gender pay disparities or retaliation. (Doc. 63-2). The Court is similarly not persuaded by Plaintiff's assertion that the missing hours outlined in the August 20, 2015 email were "intrinsically linked to the disparate pay between genders." (Doc. 68, ¶ 34). Even in the most favorable light it appears Ms. Yearns simply complained about unlogged hours due to confusion regarding who should have recorded them. The content of this email accordingly does not amount to protected conduct. *See Tiedeman*, 144 F. App'x at 566.

---

[2] While Ms. Yearns did subsequently file an EEOC charge against Koss, it does not appear from the record that her July 2015 Conversation "instituted or caused to be instituted" this charge in any way. *See* 29 U.S.C. §§ 215, *et seq.*

> b. *Plaintiff suffered an adverse employment action.*

The parties do not dispute that Ms. Yearns suffered an adverse employment action. Namely, Koss laid off Ms. Yearns from its employment. Thus, the Court next analyzes whether a causal link exists between Ms. Yearns' protected conduct and her layoff.

> c. *Plaintiff cannot show a causal link between her protected conduct and Defendant's adverse employment action.*

Generally, causation may be shown between protected conduct and an adverse employment action when temporal proximity is coupled with some other evidence. *Donathan*, 861 F.3d at 741 (laying off an employee–who had no negative reviews–on the same day as her protected activity, and immediately hiring another individual to fill the position, supported a showing of causation); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir. 2004) (finding that six days between the protected conduct and the adverse action, coupled with other evidence, raised a jury question as to causation).

Moreover, at the summary judgment stage, declarations and affidavits must be admissible according to Federal Rule of Civil Procedure 56(e). The Court may only consider "admissible evidence and [must] disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact." *Howard v. Columbia Public School District, et. al.*, 363 F.3d. 797, 801 (8th Cir. 2004) (*citing Shaver v. Independent Stave Co.*, 350 F.3d. 716, 723 (8th Cir. 2003); *United Mine Workers of Am. v. Am. Commercial Lines Transp. Servs., L.L.C.*, No. 4:08CV1777 SNLJ, 2010 WL 3721544, at *1 (E.D. Mo. Sept. 15, 2010) (noting a court must disregard a declarant's beliefs that are "not based on personal knowledge"); *see* Fed. R. Civ. P. 56(e).

Plaintiff essentially argues the following evidence supports a finding of causation: the declaration of Ms. Harmon; Mr. Vestal's directive for Mr. Tackett to report to the Pratt site around the time Ms. Yearns was laid off; and the proximity in time between Ms. Yearns' protected activity and Koss' adverse employment action. However, Plaintiff has not produced enough evidence to support the inference of a causal link between Ms. Yearns' protected conduct and Koss' adverse act.

Ms. Yearns primarily attempts to create an inferential link through heavy reliance upon Ms. Harmon's declaration. However, this declaration is insufficient because it contains vague, unsupported, and inadmissible information. (Doc. 69-4). Specifically, Ms. Harmon failed to show a factual basis as to her personal knowledge for many of the allegations she outlined in her

declaration. Ms. Harmon noted she was not involved in the decision to lay off the plaintiff, yet claimed that Ms. Yearns "was a good employee" from what she could tell, faced a "baseless" accusation after having company information on her work computer, and had no "significant performance or disciplinary problems." *Id.* Other than a meager, general summary of her former job duties, Ms. Harmon did not attempt to prove the basis for her personal knowledge of these statements.

Ms. Harmon's declaration also opined on Koss' layoff practices, stating that Defendant essentially violated its procedures when dealing with Ms. Yearns. *Id.* Ms. Harmon remarked that an anonymous individual, purportedly a Koss employee, indicated Ms. Yearns would not be rehired after her layoff. *Id.* She provided no additional factual basis as to her personal knowledge for these statements.

Furthermore, in her declaration Ms. Harmon thought it was "clear" that Plaintiff's June 2015 complaint "ruffled feathers," but again offered no support to prove her personal knowledge. *Id.* Instead, she simply preceded this statement by listing allegations that Mr. Vestal once made a derogatory remark about women to her, and that an anonymous supervisor used a "frustrated tone" when s/he asked why Ms. Yearns spoke to Ms. Harmon in June 2015. *Id.* The Court finds these statements to be speculative and unsupported.

Indeed, Ms. Harmon appears to contradict herself and other evidence from the record. Plaintiff admitted to committing at least one serious job-related error, which reflects the lack of personal knowledge Ms. Harmon had about Plaintiff's performance issues. (Doc. 69-1, 7). Moreover, in her deposition Ms. Harmon stated her belief that Ms. Yearns did not make a complaint in June 2015, but instead merely inquired about a promotion. (Doc. 63-5). However, in her declaration Ms. Harmon described the June 2015 Complaint differently, commenting that Plaintiff suspected discriminatory treatment based on unequal pay. (Doc. 69-4). Accordingly, Ms. Harmon's declaration is insufficient to show a causal link between Ms. Yearns' protected activity and Koss' adverse act.

Next, in the most favorable light to Plaintiff, Mr. Tackett's transfer to the Pratt site at a time relatively close to Ms. Yearns' layoff is insufficient to prove a prima facie case of retaliation. Plaintiff argues that Mr. Tackett was ordered to replace Plaintiff at the Pratt site immediately after her layoff, in contravention of Defendant's alleged "winding down" of the site. Plaintiff further contends that the present case is substantially similar to the facts in *Donathan*. 861 F.3d at 741.

However, even in the most favorable light Plaintiff's conclusions exceed those supported by the factual record.

This case is distinguishable from *Dothan*, and thus Plaintiff cannot show a causal link. *Id.* For one, Mr. Tackett was not hired to replace Ms. Yearns. Instead, he already worked as a QCT when he was sent to the Pratt job site. Next, Ms. Yearns' protected activity did not occur on the same day as her layoff. Rather, her protected activity happened in June 2015, and she was laid off on August 22, 2015. (Doc. 68, ¶ 30). Even assuming the June 2015 Complaint occurred on the last day of June, over eight weeks passed until her August layoff. This lengthy time period weakens any potential causal link.[3] Moreover, Ms. Yearns did not have a complaint-free employment record. As noted above, she admitted in her deposition that she made at least one serious error, and it was appropriate for Mr. Funk to confront her about it. (Doc. 69-1, 7). And, unlike *Dothan*, here Ms. Yearns was offered a transfer to another position within the company.

Additionally, it does not appear that Mr. Tackett immediately replaced Ms. Yearns at the Pratt site. Mr. Tackett testified that sometime in August 2015 he completed his work at a job site in Arkansas and contacted Mr. Vestal for his next assignment. (Doc. 69-5). Mr. Vestal then sent Mr. Tackett to the Pratt site. *Id.* Such naked facts are far afield from Plaintiff's speculative conclusion that Mr. Tackett immediately replaced Ms. Yearns after her layoff in her specific position at the Pratt site. In fact, from the record it appears Mr. Tackett actually worked at the Pratt site in July 2015, well before Ms. Yearns layoff. (Doc. 75-3).

Moreover, it appears Koss' claim about concluding work at the Pratt site is supported by the record. The total number of hours worked on the Pratt site reduced drastically from August 2015 to September 2015, and by November 2015 were nearly zero. (Doc. 75-3). Together, these bare facts do not support the long jump attempted by Plaintiff to show causation between her protected conduct and ultimate layoff. Thus, Plaintiff has not proven her prima facie case of retaliation.

As Plaintiff has failed to prove a case a prima facie retaliation, the Court need not continue with its burden-shifting analysis under *McDonnell Douglas*, nor address whether punitive damages are allowable under the EPA.

### IV. Conclusion

Defendant's Motion for Summary Judgment (Doc. 62) is GRANTED as set forth herein.

---

[3] The Court notes that even if the July 2015 Conversation amounted to protected activity, temporal proximity would still be inadequate to raise a causal inference in this case.

IT IS, THEREFORE, ORDERED.

Dated this 14th day of January, 2019, at Jefferson City, Missouri.

                                                Willie J. Epps, Jr.
                                                United States Magistrate Judge